# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

RICHARD D. MOISE,   *

Plaintiff   *

v   *   Civil Action No. RDB-18-1355

HOWARD COUNTY DETENTION CENTER *
*et al.*,
Defendants   *

  ***

## MEMORANDUM OPINION

The pro se Plaintiff Richard D. Moise filed the above-captioned civil rights action alleging a variety of claims against correctional staff at Howard County Detention Center. ECF No. 1. Defendants[1] filed a Motion to Dismiss. ECF No. 17. Plaintiff opposed the motion (ECF No. 22) and Defendants have filed a reply (ECF No. 23). The matter is now ripe for review. The Court finds a hearing in these matters unnecessary. *See* Local Rule 105.6. For the reasons that follow, despite liberally construing Plaintiff's submissions, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), Defendants' dispositive Motion IS GRANTED.

## BACKGROUND

Plaintiff's Complaint is a laundry list of seemingly unrelated grievances which he claims occurred while he was incarcerated at the Howard County Detention Center ("HCDC"). ECF No. 1.

He indicates that on November 18, 2017, he submitted an inmate grievance alleging he was denied access to the law library. ECF No. 1 at p. 3. On January 31, 2018, Janine Jackson denied Plaintiff access to the law library and advised him that he would not attend the law library so long

---

[1] The Clerk shall amend the docket to reflect the correct names of Defendants Jack Kavanagh, Janine Jackson, and Darnell Morant.

as she was working there. Plaintiff states that this also occurred on February 9, 2018, December 21, 2017, and December 30, 2017. *Id*. He claims that this "hindered [him] from filing meritorious claims to the court to fight [his] criminal case." *Id*.

On November 19, 2018, he submitted a grievance alleging that he was not provided clean living quarters. Plaintiff claims that he advised Officer Watkins that the showers had not been sanitized for days and that Watkins took his grievance but did not provide him a receipt. *Id*.

Plaintiff baldly alleges that on various dates in November of 2017 and January of 2018 he was denied: clean housing, a meritorious Prison Rape Elimination Act (PREA) claim and his legal and personal mail. Plaintiff attempted to clarify his claims in his opposition response. ECF 22. For example, Plaintiff indicates that HCDC staff member Darrell Morant sexually harassed him and left him locked inside a shower which exposed Plaintiff to the entire housing unit for 30 minutes. ECF No. 22 at p. 2-3. Plaintiff reported the conduct to the HCDC PREA coordinator but was denied relief. *Id*. at p. 3.

He also explains that when he was transferred to HCDC he was placed on suicide watch by unnamed mental health professionals. ECF 22 at p. 3. He was placed in a holding cell that had no privacy and was forced sleep on the floor. *Id*. He states that the cell had no bathroom and he was denied use of the bathroom when officers were "too busy." *Id*. Plaintiff complains that over several days he was forced to sleep without a mattress or in the booking area, and that when he was eventually moved to medical housing the cell was unclean. *Id*. at p. 4. He alleges that being forced to sleep on the flor and/or without a mattress caused him physical injury, emotional distress, and caused his skin to break out in rashes resulting in permanent damage to his skin. *Id*. On an unspecified date he was moved to administrative segregation where again he claims the cell was dirty, the toilet was covered with urine, and the mattress and sheets were dirty. He alleges that he

2

was denied cleaning supplies by unidentified officers. *Id.*

## LEGAL STANDARD

Defendants the Howard County Detention Center, Jack Kavanagh, Director of Howard County's Department of Corrections, Janine Jackson and Darnell Morant move to dismiss the complaint pursuant to Fed. R. Civ. Proc. 12(b)(6). ECF No. 17. In reviewing a complaint in light of a Motion to Dismiss pursuant to Fed. R. Civ. Proc. 12(b)(6) the court accepts all well-pleaded allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)); *Ibarra v. United States,* 120 F.3d 472, 473 (4th Cir. 1997). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002) (stating that a complaint need only satisfy the "simplified pleading standard" of Rule 8(a)).

The Supreme Court of the United States explained a "plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Nonetheless, the complaint does not need "detailed factual allegations" to survive a motion to dismiss. *Id.* at 555. Instead, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 563. To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial

3

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

"[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563 (citing *Sanjuan v. Am. Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d, 247, 251 (7th Cir. 1994)) (once a claim for relief has been stated, a plaintiff 'receives the benefit of imagination, so long as the hypotheses are consistent with the complaint').

Although courts should construe pleadings of self-represented litigants liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), legal conclusions or conclusory statements do not suffice, *Iqbal*, 556 U.S. at 678. The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005).

## DISCUSSION

A. Howard County Detention Center

Section 1983 provides for liability on "[e]very person who, under color of [state law], *subjects, or causes to be subjected*, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983 (emphasis added)). Only "persons" are subject to suit under §1983, and entities such as the Howard County Detention Center do not qualify. *Will v. Michigan Dept. of State Police*, 491 U.S.

4

58, 65 (1989). Thus Plaintiff's §1983 complaint against the Howard County Detention Center must be dismissed.

To the extent Plaintiff intended to sue Howard County, his claim is also subject to dismissal. In suing a municipal government and agency under 42 U.S.C. § 1983, Plaintiff must prove two elements to succeed in this claim. First, he must establish the existence of a constitutional violation on the part of the named defendant. *See Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (jury's finding that a police officer inflicted no constitutional injury on the plaintiff removed any basis for municipal liability against city and members of police commission); *Temkin v. Frederick Cty Comm'rs*, 945 F.2d 716, 724 (4th Cir. 1991) (§ 1983 claim of inadequate training or supervision cannot be established without a finding of a constitutional violation on the part of the person being supervised); *see also Dawson v. Prince George's County*, 896 F. Supp. 537, 540 (D. Md. 1995). Second, Plaintiff must show that any constitutional violations were proximately caused by a policy, custom, or practice of the Defendants. *See Monell v. Dep't of Social Servs. Of N.Y.*, 436 U.S. 658, 691, 694 (1978). Municipal policy arises from written ordinances, regulations, and statements of policy, *id.* at 690; decisions by municipal policymakers, *Pembaur v. Cincinnati*, 475 U.S. 469, 482-83 (1986); and omissions by policymakers that show a "deliberate indifference" to the rights of citizens. *See Canton v. Harris*, 489 U.S. 378, 388 (1989).

Nothing in Plaintiff's Compliant or opposition response indicates that the Howard County Department of Corrections instituted a policy, practiced a custom, or engaged in a practice that operated to deny Plaintiff his constitutional rights. Plaintiff does not include any allegations describing an institutional policy that caused the issue he claims to have experienced during his detention. Thus, Howard County Detention Center is entitled to have any claims against it dismissed under Rule 12(b)(6) for failure to state a claim.

B. Jack Kavanagh

Plaintiff's Complaint against Jack Kavanagh is also subject to dismissal. Plaintiff has pointed to no action or inaction on the part of Kavanagh that caused him constitutional injury. Other than naming him in the caption of his Compliant, Plaintiff failed to specify any actions undertaken by Kavanagh. "Although § 1983 must be read against the background of tort liability that makes a man responsible for the natural consequences of his actions, liability will only lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiffs' rights." *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (citation, alteration, and internal quotation marks omitted). Allegations of personal involvement are necessary in order for a case to proceed. *See Wright v. Collins,* 766 F.2d 841, 850 (4th Cir.1985) ("In order for an individual to be liable under § 1983, it must be affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights." (internal punctuation omitted)); *Swint v. City of Wadley*, 51 F.3d 988, 999 (11th Cir. 1995) (explaining that 42 U.S.C. § 1983 "require[s] proof of an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation").

Plaintiff clarifies in his opposition response that it is his intent to hold Kavanagh liable as the director of the HCDC. In a § 1983 claim, a defendant cannot be found liable under a theory of vicarious liability or *respondeat superior*. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (holding that there is no *respondeat superior* liability under § 1983). Thus, Kavanagh's status as Director of HCDC does not subject him to liability. Under § 1983, any liability imputed to supervisory officials must be supported by evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and

6

unreasonable risk of constitutional injury to individuals like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F. 3d 791, 799 (4th Cir. 1994) (citations omitted).

In his opposition response, Plaintiff claims without specific factual support that Kavanagh had "personal knowledge of the facility staff" denying his rights, "personally" failed to deliver unspecified legal mail, "deliberately" prevented Plaintiff from communicating with the Commissioner, and "stood by and did nothing" after Plaintiff informed Kavanagh of his concerns about the conditions in which he was being housed. ECF No. 22 at p. 6. Because a memorandum in opposition to a motion is not a proper vehicle for amending a complaint or adding new claims, these additional claims will not be considered. *See Cutrera v. Board of Sup'rs of Louisiana State University*, 429 F.3d 108, 113-14 (5th Cir. 2005) (holding that a claim raised not in the complaint but in response to a dispositive motion is not properly before the court); *Gilmour v. Gates, McDonald and Company*, 382 F.3d 1312, 1315 (11th Cir. 2004); *Woodbury v. Victory Van Lines*, 286 F. Supp. 3d 685, 692 (D. Md. 2017) (stating it is axiomatic that a plaintiff may not use their memorandum in opposition to amend the complaint); *Weigle v. Pifer*, 139 F. Supp. 3d 760, 774 fn 10 (S.D. W.Va. 2015) (holding court need not consider new evidence or arguments raised in a response to a dispositive motion).

Even if the Court were to consider the additional information, Plaintiff's claims against Kavanagh fail. Despite Plaintiff's efforts to rehabilitate his claim, he has nevertheless failed to set forth sufficient factual allegations to state a cognizable claim of supervisory liability as to Kavanagh. *Twombly*, 550 U.S. at 555 ("holding federal pleading standards require "more than an

unadorned, the-defendant-unlawfully-harmed-me accusation"); *Iqbal*, 556 U.S. at 678 (2009) (holding that although "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations"). Instead, Plaintiff's claim is full of legal conclusions unsupported by specific factual allegations.

C. Darnell Morant

Similarly, Plaintiff's claims against Morant are subject to dismissal. As noted above, it is only in his opposition response that Plaintiff provides any context for his claim against Morant, explaining that he intends to hold Morant liable for the thwarting of his PREA claim that Plaintiff filed as a result of Morant sexually harassing him by locking him in a shower for 30 minutes. As previously noted, an opposition response is simply not the proper vehicle for amending a complaint or adding new claims. As such, Plaintiff's additional allegations are not properly before the Court.

Even if Plaintiff had properly amended his Complaint, the Complaint would nevertheless be subject to dismissal as there is no basis in law for a private cause of action under § 1983 to enforce a PREA violation. "[S]ection 1983 itself creates no rights; rather it provides a method for vindicating federal rights elsewhere conferred." *Doe v. Broderick*, 225 F.3d 440, 447 (4th Cir. 2000) (internal citations omitted). "[W]here the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit, whether under § 1983 or under an implied right of action." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 286 (2002).

The purpose of PREA is "to address the problem of rape in prison, authorizes grant money, and creates a commission to study the issue. The statute does not grant prisoners any specific rights." *Chinnici v. Edwards*, No. 1:07–cv–229, 2008 U.S. Dist. LEXIS 119933, 2008 WL 3851294, at *3 (D. Vt. Aug. 13, 2008); *Williams v. Dovey*, No. 8:15-cv-1891, 2016 WL 810707 at

*7 (D. Md. March 2, 2016); *DeLonta v. Clarke*, No. 7:11-cv-00483, 2012 WL 4458648, at *3 (W.D. Va. Sept. 11, 2012) *aff'd sub nom, De Lonta v. Pruitt*, 548 F.Appx 938 (4th Cir. 2013). Nothing in the PREA suggests that Congress intended to create a private right of action for inmates to sue prison officials for noncompliance with the Act. *Williams v. Dovey*, No. 8:15-cv-1891, 2016 WL 810707 at *7.

D. Janine Jackson

Plaintiff's Complaint against Janine Jackson for alleged denial of access to the courts must also be dismissed. Prisoners have a constitutionally protected right of access to the courts. *See Bounds v. Smith*, 430 U. S. 817, 821 (1977). However,

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis v. Casey*, 518 U.S. 343, 355 (1996).

"[A] prisoner wishing to establish an unconstitutional burden on his right of access to the courts must show 'actual injury' to 'the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.'" *O'Dell v. Netherland*, 112 F. 3d 773, 776 (4th Cir. 1997) (quoting *Lewis*, 518 U.S. at 355). "The requirement that an inmate alleging a violation of *Bounds* must show actual injury derives ultimately from the doctrine of standing." *Lewis*, 518 U.S. at 349. Actual injury occurs when a prisoner demonstrates that a "nonfrivolous" or "arguable" claim was frustrated or impeded because of the denial of access to the courts. *Id.* at 352-53 & n.3; *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (holding "plaintiff must identify a 'nonfrivolous,' 'arguable' underlying claim. . .the underlying cause of action . . . is an element

that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation.") (citations omitted)

Allegations of injury arising from the denial of access to the courts must be specific and the plaintiff must explain how their litigation was harmed. *See Bausch v. Cox*, 32 F. Supp. 2d 1057, 1059 (E.D. Wis. 1998) (holding claim of inadequate law library facilities was too speculative to support relief without a description of the claims presently being hindered); *Ali v. District of Columbia*, 278 F.3d 1, 8 (D.C. Cir. 2002) (holding allegation that inmate's litigation was "set back" by alleged conduct was insufficient to establish actual injury). Plaintiff's allegation that he was denied access to the legal library on four occasions over a two month period of time fails to state a plausible claim of denial of access to the courts. As Plaintiff has not offered sufficient facts to state a plausible claim under *Iqbal*, 556 U.S. at 678, his Complaint must be dismissed.

E. Conditions of Confinement

Lastly, Plaintiff's conditions of confinement claims are also subject to dismissal.[2] Again, these allegations, made belatedly by Plaintiff in his opposition response, are not properly before the Court. Nevertheless, the additional information provided in his opposition fails to cure the deficiency of his initial filings. Plaintiff has not specified the names of Defendants who were responsible for the conditions complained of nor has he alleged enough facts to plausibly state a conditions claim.

Conditions which "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

---

[2] The constitutional protections afforded to a pre-trial detainee as provided by the Fourteenth Amendment are co-extensive with those provided by the Eighth Amendment. *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979). "Due process rights of a pretrial detainee are at least as great as the eighth amendment protections available to the convicted prisoner." *Hill v. Nicodemus*, 979 F.2d 987, 991 (4th Cir. 1992) (citing *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988)).

However, conditions which are merely restrictive or even harsh, "are part of the penalty that criminal offenders pay for their offenses against society." Id.

> In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements - that 'the deprivation of [a] basic human need was *objectively* sufficiently serious,' and that '*subjectively* the officials acted with a sufficiently culpable state of mind.'

*Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (emphasis in original) (citation omitted). "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called "punishment," and absent severity, such punishment cannot be called "cruel and unusual." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (citing *Wilson v. Seiter*, 501 U.S. 294, 298-300 (1991)).

Only extreme deprivations are adequate to state a conditions of confinement claim. *Shakka*, 71 F.3d at 166. Plaintiff's allegations regarding his mattress and the state of his cell, in light of both the apparently short duration he was denied a mattress and his admission that the cell was occasionally cleaned (ECF 22 at p. 4), do not rise to the level of a constitutional claim. *Shakka*, 71 F.3d at 166-68 (holding inmate who received water and cleaning materials instead of a shower three days after having human excrement thrown on him could not recover in a conditions of confinement claim); *Beveratti*, 120 F.3d at 504 (inmates housed in vermin infested cells, smeared with feces and urine, flooded with water without clean clothing, linen, or bedding, did not experience "significant hardship in relation to the ordinary incidents of prison life" such that their liberty interest was implicated); *Parker v. Stevenson*, 625 F. App'x 196, 200 (4th Cir. 2015) (affirming summary judgment for defendants where inmate's injuries due to lack of a mattress in his cell failed to establish a serious or significant physical injury capable of supporting an Eighth Amendment conditions-of-confinement claim).

11

## CONCLUSION

Accordingly, the Defendants' Motion to Dismiss IS GRANTED. A separate Order follows.

_FEBRUARY 4, 2019_
Date

_/s/ Richard D. Bennett_
RICHARD D. BENNETT
UNITED STATES DISTRICT JUDGE